†BENSTER v. FRANK POWELL & CO.

1. ADMISSIONS OF PARTY.
   The admissions of a party are competent to be given in evidence against him, but when offered as such they must be direct admissions and not hearsay.

2. HEARSAY EVIDENCE.
   The testimony of a witness on trial in behalf of the plaintiff that at some time prior he had told the plaintiff what the defendant had told him, or the testimony of the plaintiff that the witness in question had told him what the witness had said to the witness on some previous occasion, is hearsay.

KING, J.

The plaintiff in error was defendant below. The case seems to have had a curious history. In 1884, about 12 years ago, Powell & Co. began

---

† A case with this title was reversed by the Supreme Court; unreported, 58 O. S., 735; see also 4 Circ. Dec. 4.

Benster v. Powell & Co.

a suit before a justice of the peace to recover in replevin a lot of personal property, machinery, etc.—in fact all the property that Benster claimed to own or possessed at the time. Some of this property they took on their writ, and some they took without a writ, and other parts of it they destroyed. An action was brought against them for damages for destruction of the property, which has been disposed of, and has nothing to do with this case. This is a trial of the aforesaid replevin suit. Commenced in 1884, tried before a justice, appealed to the court of common pleas, there it remained, in a comatose state, until October, 1895, when it was tried, and a verdict rendered for the plaintiff below. It is claimed that verdict should be set aside.

Powell & Co., when they began this proceeding to get possession of this property, claimed they had bought it of Mr. Benster's wife, who had shortly before that been residing with him and upon good terms, but who at that time had left him; and that she had claimed to own all the property which Benster was in possession of, and that she sold it to Powell & Co., who were engaged in the same kind of business that Benster was undertaking to carry on.

The first notice that Benster had of this sale was when Mr. Powell appeared at his shop and claimed that he had bought its contents. Mr. Benster refused to deliver it up; and the next morning Mr. Powell came again with a constable and a large force of men and teams, and carried it off. One of the curious features of the case is the manner in which Powell & Co. claim they acquired title to the property; without consultation with the apparent owner, or any notice to him, the person who was in possession of all of it, they purchase it of that man's wife.

It is conceded in the case that the plaintiff procured such title as he had to the property in question of Mrs. Benster, and that her title, whatever it was, came by virtue of a written agreement made between her and her husband prior to their marriage, by the terms of which Mr. Benster sold to his intended wife certain chattel property. The agreement itself had been put in evidence before a justice of the peace some twelve years before this trial in the court of common pleas, and there lost or mislaid, and the question of its contents is a material question here, the plaintiff claiming that the paper conveyed practically all the chattel property owned by Benster, while Benster claimed that it named the articles, and that the ones named were not the ones claimed in this action by Powell & Co.

On the trial of the case before the justice in 1885, the several claims of these parties were set forth; the wife, who appeared as a witness there, and Powell & Co. and their witnesses, testified to the contents of this paper as they had seen it the year before. And they also testified in this trial as to the contents of it, claiming that the paper provided for the conveyance of all Benstor's property to his wife. Benster, the defendant, claimed that it provided for specific personal property. And it was conceded that the paper had been received in evidence before Justice Scott at a time previous when there was a trial of the right of property, in which some of this property was involved, having been levied upon by somebody who had a judgment against Benster; and it was conceded practically on this trial, as well as that before the justice, of this case, that the paper was last seen in Scott's court. When this case came on for trial, Mr. Benster appeared as a witness in court with a paper which he said was the one, and he testified that he had found that among Mr. Scott's papers, and what he relates in that respect is absolutely uncontra-

dicted by any evidence in the record, except the testimony of the wit-
nesses who testified to the contents of the paper.

On this trial in October, 1895, this paper is presented. The plaintiff
proceeds to give in evidence from his witnesses the contents of the paper
as it originally existed, as they saw it and read it; and the witnesses,
somewhat remarkably, have no difficulty in remembering exactly what
its contents were, although they were business men, were quite actively
engaged in business, and had not seen it for nearly twelve years.

The plaintiff, to make out his case, was bound, of course, to show
that he had purchased this property from the woman, and had acquired
title to it. To do that he testified himself, and he called other witnesses,
among others, J. A. Barber. Mr. Barber claimed that in 1885 Mrs. Ben-
ster came to him and employed him to act for her in her difficulties and
troubles, and among other things wanted him to sell this property; and
he applied to Powell & Co. as being the ones likely to purchase, they be-
ing engaged in the same business, to purchase it; and he did sell it, and
sold all of it. Now the plaintiff was making out his title to this property,
and it was competent for him to show—and really that is the only thing
that it was competent for him to show—that he bought the property and
paid for it, and of whom he bought it, and then perhaps back of that
the title of his grantor. He claimed that he bought of Mrs. Benster, and
Mrs. Benster claimed to be the owner. In making out his firm's title
and right of possession, he called Mr. Barber, and the following occurred:

Q. You have stated, yesterday, in your testimony, that you deliv-
ered this bill of sale—this property—to Mr. Powell, and that you nego-
tiated the sale. A. Yes.

Q. What was said to him in regard to the title of the property and
the statements of Mr. Benster in regard to its ownership?

That is objected to. The court says:

The witness may give any statement that he communicated to Mr.
Powell, as having been made by Mr. Benster before that.

Witness: Before we secured this sale?

The Court: Yes, before you secured the sale; not anything after the
sale, but up to the time of the consummation of the sale, you may give
any statement which you gave to Powell as coming from Benster.

Mr. Brumback: To that we except.

Witness: I urged Mr Powell to take this property, and, to convince
him that the wife owned it, I gave him a history of the matter. I told
him what Mr. Benster had sworn to, and that there could be no possibil-
ity of any trouble with his title. I told him that Mrs. Benster owned it,
and I didn't think there would be any question ever raised about it.

Mr. Tolerton: Q. Was there anything said to him at the time
about what Benster had said to you? A. Yes, sir; I told him that Ben-
ster had said to me on numerous occasions that his wife owned that
property, and that I would sell it to him.

Then they called Mr. Frank Powell, and he was asked—

What, if any, statements did Mr. Barber make to you while negotiat-
ing this sale in regard to the title of the property, as to statements made
by Mr. Benster? A. Well, he gave me to understand—(Objected to.)

The Court: I think that perhaps, in part, is objectionable. (To the
witness.) You must confine your statement to telling the jury what Mr.
Barber communicated to you as having been said or sworn to by Mr.
Benster before that time.

Witness: Mr. Barber told me the title to the property was all right—

Mr. Tolerton: Q. No; about the statements of Benster. A. Well, he said, with other things, that Mr. Benster had sworn that the property all belonged to his wife, and that it did belong to his wife, and that there was no question of title about it. That was the sum and substance of it all.

That is the first error complained of in this record. There are other questions made, but there are none other to which I shall deem it necessary to allude, further than to say that we find no specific errors excepted to in the record.

Was this evidence competent at this stage of this case? Mr. Powell was making out his title to his property, and it was proper for him to give in evidence where he procured it, of whom he bought it, and also to further give in evidence, if there was any question made, the title of the person from whom he bought it—in this case Mrs. Benster—where she got it, how she came by it, and of whom she bought it. The title to personal property is traced like the title to any other property, by showing its exchange through the different owners who have held and owned it. After all, the question is, Who owns it? It was proper for Powell to show what title he acquired, if he bought it. To make that out it was proper to show the facts attending the sale— not necessarily the conversations, but the facts attending the sale to him, and the sale to any other person through whom it was necessary for him to trace the title. He could show it by the persons who were engaged in the transaction, and he could show it further by circumstances, and by the admissions of the defendant. But here the court seems to have gone off upon the idea that the statements by a person under oath of what he had said that had been said to him—would be the same thing as for the witness to testify to what was said to him. Mr. Barber is then permitted to say that he told Powell that Benster had said to him that he had sold this property to his wife. He said that he told Powell that Benster had testified in another case that he had sold this property to his wife. And then Mr. Powell is put on, and he testifies, not to what Benster told him, which would have been competent, and the only thing that would have been, but what Barber told him that Benster said in a justice's court and also to him, Barber. It seems to the court, without any doubt, that kind of testimony is incompetent. Of course there might come a time when some of that testimony would be competent in the way of rebuttal, after cross-examination; but in making out the plaintiff's case it certainly was not competent to repeat what Mr. Barber told Mr. Powell, nor what Powell heard Mr. Barber say that Mr. Benster had been saying, no matter where Benster said it, no matter whether it was under oath in another case, no matter whether it had been said to Barber, no matter to whom it had been said. The witness could testify to admissions made to him by Benster; that is all he could testify to. We think those were substantial errors.

The controversy in this case turned wholly upon whether the jury should believe, ultimately, that this contract which was brought in by Mr. Benster in this case was the original document that had been made. The witnesses who testified in relation to it were Mr. Barber, Mr. Parks, Mr. Rike, and others. They testified that they had seen this, as I say, over eleven years before, and they were positive that it contained many different things than the paper presented by Mr. Benster contains. The controversy is over the genuineness of that document. If Mr. Benster had said to Mr. Barber, either in a trial or elsewhere, that he had sold

to his wife under an ante-nuptial contract all his personal property, such a statement would tend to contradict the claim which he made on that trial that this paper was the contract, and did not convey all but only certain specific articles; it would tend to support and uphold the claim which the plaintiff made in order to sustain his title, that all the property had been conveyed. (When I use the word "all," I mean all the property involved in this suit.) So, as I have said, the plaintiff, in making out his claim, and in making out his title, was entitled to introduce Mr. Benster's admissions, but he must introduce them correctly; he could not introduce what somebody else said he had heard Mr. Benster say; else he might go all over town, and call in witnesses, and introduce the statement of not only one witness but of half a dozen. It may be true that there is not much difference between the effect to be given, so far as Barber's testimony is concerned, to the statement that he told Powell what he claims he had heard Benster say, and his statement on the trial of what Benster said, if he had so testified. But there is a decided difference in fact. Mr. Barber did not swear on that trial that Mr. Benster told him this; the only thing he swore to was that he told Mr. Powell that Mr. Benster told him so. What Mr. Barber would have said, if asked the direct question, we cannot assume. But if there was no difference in the case of Barber, there was as to Powell. He testified to what Mr. Barber told him, without ever having heard Mr. Benster say a word on the subject, and that testimony certainly was not competent.

We shall reverse this judgment for the admission of these two items of incompetent testimony. We have some doubt whether or not this verdict is not against the weight of the evidence, but we are not clearly of opinion that it is, and shall not so hold. For myself, I think that a very formidable arraignment of this judgment could be made out from this testimony, but we do not care to express any opinion upon the particular items of testimony, but reverse the judgment upon the ground I have stated, and give the parties an opportunity to try it over.

*Hurd, Brumback & Thatcher*, for Plaintiff in Error.

*E. W. Tolerton*, for Defendant in Error.